Filed 6/22/26  Global Discoveries v. County of Madera CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| GLOBAL DISCOVERIES, LTD., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> COUNTY OF MADERA et al., <br><br> Defendants and Respondents. | F089741 <br><br> (Super. Ct. No. MCV084356) <br><br><br> **OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Madera County.  Michael J. Jurkovich, Judge.

Downey Brand, Anthony L. Vignolo, Christopher M. Kolkey and Tyler J. Horn for Plaintiff and Appellant.

Lozano Smith, Regina A. Garza and Cyril H. Yu for Defendants and Respondents.

-ooOoo-

Global Discoveries, Ltd. (Global) filed a petition for writ of mandate seeking to set aside the denial of its claim for excess proceeds from a tax default sale.  Respondents County of Madera and its Treasurer-Tax Collector Tracy Kennedy (collectively, the County) had denied the claim for failure to submit supporting documentation within a year of the recordation of the deed from the tax sale.  The trial court denied the petition,

finding that it was moot because the County paid the excess proceeds to another claimant and Global did not seek injunctive relief to prevent the disbursement.

On appeal, Global contends the trial court erred in finding that the petition should be viewed as one for traditional mandamus under Code of Civil Procedure section 1085[1] rather than for administrative mandamus under section 1094.5, and in determining that the petition was moot. Global asks us to review the merits of the petition and grant the petition. We do not decide which type of mandamus is appropriate in this case or reach the issue of whether a writ should issue as we conclude that the petition is moot. Accordingly, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Revenue and Taxation Code Section 4675*

"The Revenue and Taxation Code directs how counties receive and distribute proceeds from a tax sale of real property." (*Hodges v. County of Placer* (2019) 41 Cal.App.5th 537, 545 (*Hodges*).) "After depositing certain sale costs in the general fund," the proceeds of the sale are deposited in " 'the delinquent tax sale trust fund' for distribution. ([Rev. & Tax. Code,] § 3719)." (*Ibid.*) After distributing certain sums for the county's costs of publishing and recording the notice of sale, to redeem the property from tax default, and to satisfy current taxes, assessments, and penalties, "[t]he county retains any excess proceeds in the delinquent tax sale trust fund … to allow parties of interest in the property to claim them." (*Ibid.*)

Revenue and Taxation Code section 4675 establishes the procedure for parties of interest in the property to make their claims. (*Hodges*, *supra*, 41 Cal.App.5th at p. 545.) "Parties who had an interest in the sold property may file a claim for a share of the excess proceeds up to one year following the recordation of the tax deed." (*Ibid.*; Rev. & Tax.

---

[1]     Undesignated statutory references are to the Code of Civil Procedure.

2.

Code, § 4675, subd. (a)(1).)[2]  To be considered timely, the claim must be postmarked on or before the one-year expiration date.  (Rev. & Tax. Code, § 4675, subd. (a)(2).)

Revenue and Taxation Code section 4675, subdivisions (b) and (c) detail the process by which a party of interest may assign their right to claim excess proceeds, and the required disclosures and advisements to the party of interest to act on its behalf. Revenue and Taxation Code section 4675, subdivision (d) states:  "The claims shall contain any information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds."

After the one-year period expires and "the excess proceeds have been claimed by any party of interest as provided herein, the excess proceeds shall be distributed on order of the board of supervisors to the parties of interest who have claimed the excess proceeds in the order of priority" established by statute.  (Rev. & Tax. Code, § 4675, subd. (e)(1).)  Proceeds are first distributed to any claimant who held a recorded lien prior to recordation of the tax deed on the property at the time of the sale.  After that, proceeds are distributed to claimants "with title of record to all or any portion of the property prior to the recordation of the tax deed."  (Id., § 4675, subd. (e)(1)(A) & (B).)  If "a person with title of record is deceased at the time of the distribution of the excess proceeds, the heirs may submit an affidavit" pursuant to Probate Code section 13100 et seq., to support their claim for excess proceeds.  (Id., § 4675, subd. (f).)  After meeting these claims, the county may transfer any unclaimed excess process to its general fund.  (Id., § 4674.) "Any action or proceeding to review the decision of the board of supervisors … to accept

---

[2]    Revenue and Taxation Code section 4675, subdivision (a)(1) provides:  "Any party of interest in the property may file with the county a claim for the excess proceeds, in proportion to that person's interest held with others of equal priority in the property at the time of sale, at any time prior to the expiration of one year following the recordation of the tax collector's deed to the purchaser."

or deny the claim shall be commenced within 90 days after the date of that decision of the board of supervisors ….” (*Id.*, § 4675, subd. (g).)

Finally, when the board of supervisors has been petitioned to rescind the tax sale pursuant to Revenue and Taxation Code section 3731,[3] any excess proceeds shall not be distributed to the parties of interest until at least one year following the date the board of supervisors determines the tax sale should not be rescinded, and only if the person who petitioned the board of supervisors has not commenced a court proceeding pursuant to Revenue and Taxation Code section 3725.[4] If such a court proceeding has been commenced, any excess proceeds shall not be distributed to the parties of interest until a final court order is issued. (Rev. & Tax. Code, § 4675, subd. (e)(2)(B).)

***The County's Claims Policy***

In 2019, the County's Board of Supervisors (board) adopted the "County of Madera Tax Sale Policy Regarding the Submission of Claims for Excess Proceeds" (the claims policy), which became effective on July 1, 2019. The purpose of the claims policy "is to clearly define the process and requirements for claims for excess proceeds filed by parties of interest, as defined by … Revenue and Taxation Code section 4675, regarding a property that has been sold by the Madera County Treasurer-Tax Collector's Office at a sale for tax-defaulted property." The claims policy states that pursuant to Revenue and Taxation Code section 4675.1, "the Madera County Treasurer-Tax Collector is authorized to establish the information and proof deemed necessary to satisfactorily establish a

---

[3] Revenue and Taxation Code section 3731 sets forth the procedure for rescinding the tax sale of property.

[4] Revenue and Taxation Code section 3725, subdivision (a), provides that "[a] proceeding based on alleged invalidity or irregularity of" a sale of tax-defaulted real property "can only be commenced in a court if both of the following are satisfied:" (1) the board of supervisors has been petitioned "pursuant to Section 3731 within one year of the date of the execution of the tax collector's deed"; and (2) "[t]he proceeding is commenced within one year of the date the board of supervisors determines that a tax deed sold under this part should not be rescinded pursuant to Section 3731."

4.

claimant's right to all or any portion of excess proceeds for those cases covered by this policy."

The claims policy states that Revenue and Taxation Code section 4675, subdivision (d), "provides that any claim for excess proceeds shall contain all information and proof deemed necessary by the Madera County Treasurer-Tax Collector and has determined that the information provided and proof required is on the claim form and has supporting documentation in order to establish a claimant's rights to all or any portion of excess proceeds." A claimant must use the "Excess Proceeds Claim Form" developed by the County's Treasurer-Tax Collector's office (the claim form), the "[f]ailure to provide any information required" on the claim form "will result in denial of the claim," and the claim form must contain the amount or percentage of claim from available gross excess proceeds as of the sale date, as well as the claimant's filing status, name, address, and telephone number.

The claims policy requires an individual claimant to "file his or her own claim, unless he or she has chosen to assign his or her rights to another party." The claims policy emphasizes that: "**An individual has the right to file a claim for an excess proceeds on his or her own behalf directly with the county.**" The claims policy provides that "[u]nder no circumstances shall any claimant be given additional time to file" a valid claim form beyond the one-year filing deadline. "It is the claimant's responsibility to submit a complete claim, including all necessary supporting documentation by the close of business on the final date to file a claim for excess proceeds."

The claims policy lists documentation that is recommended to prove a claim for excess proceeds, which must be submitted with the claim form, verified under penalty of perjury, and notarized. The claims policy emphasizes that the County's "**Treasurer-Tax Collector's office is not responsible for informing the claimant of missing attachments or incomplete claims**." A qualified heir of a person with title of record

5.

"must submit all documentation required to prove his or her legal standing as an heir" to that person. The documentation includes a notarized probate affidavit, verified under penalty of perjury and executed by all claimants pursuant to Probate Code sections 13100–13116, and the last will and testament, if applicable. An assignee of a party in interest must submit all proof required of any qualified claimant, as well as a notarized affidavit verified under penalty of perjury and executed by all parties to the assignment attesting that specified disclosures were made to the assignor.

The section entitled "**CLAIM REVIEW**" states that, pursuant to Revenue and Taxation Code section 4675, "claims will be processed after one (1) year has passed from the date of the recording of the deed to the purchaser," and to receive board consideration, "completed claims must be received on or before the close of business on the final date of expiration of one (1) year following the date of the recording of the deed to the purchaser." If the claim is denied, the claimant will receive a letter from the County's Treasurer-Tax Collector. "If more than one claimant files for excess tax sale proceeds from a sale within the filing period" and the County's Treasurer-Tax Collector "is unable to determine whether all or any of the claimants are parties of interest," the Treasurer-Tax Collector "may refer the matter to their County Counsel, which may delay the approval and disbursement of claims."

"After reviewing the claims and after the filing deadline," the Treasurer-Tax Collector "shall report to the Board of Supervisors the number of total valid claims and disbursement amounts for approval." The claims policy contains a disputed claims procedure, which provides: "Following a period of at least 90 days after the notice has been given to each claimant and in the event that no claimant files an action with the Board of Supervisors, the Madera County Treasurer-Tax Collector may request that County Counsel initiates an action in interpleader, naming as defendants all claimants who have timely filed a claim. During the pendency of any proceeding taken pursuant to these subsections, the Madera County Treasurer-Tax Collector shall retain all excess tax

6.

sale proceeds on deposit." The County's Auditor-Controller is required to "keep a proper record of each claim paid under the provisions of this policy and shall be notified by the Madera County Treasurer-Tax Collector of any litigation instituted concerning any claim made or paid under California Revenue and Taxation Code section 4675. [¶] Proceeds will be disbursed after the 90 day disputed claim period upon order of the Board of Supervisors, in proper proportion, according to priority according to … Revenue and Taxation Code [section] 4675(e)."

The instructions for filing a claim for tax sale excess proceeds explain, as stated in the claims policy and as pertinent here, that excess proceeds will be distributed first to lienholders of record, and then to any person with record title. The instructions provide that if the person with record title is deceased, the heirs may submit an affidavit pursuant to Probate Code section 13100 et seq., to support their claim, and a party of interest may assign his or her right to a third party who may claim the excess proceeds. The instructions state that heirs to a person with record title must submit: (1) copies or an original of recorded documents, such as a deed, death certificate, or court order, supporting their claim; (2) a notarized verification that the claimant is the person named in the document where title was acquired and photo proof of identity; (3) supporting documentation such as utility payments, property improvement/repair receipts and other types of documents to prove the claim; and (4) a properly completed affidavit and a notarized verification of proof of identity. The instructions state that after the board's review, the claim will either be approved or denied, and the tax collector will notify the claimant of the action taken by the board. If the claim is approved, the auditor-controller will issue a county warrant in payment after 90 days.

The claim form asks the claimant to specify the category of claimant and to list the claimant's name, address, email, social security number, driver license number, and phone number. The claim form contains a certification of the claimant, which is signed under penalty of perjury and states, among other things: "Documentation that supports

7.

my claim is enclosed. I understand that this claim form[] must be submitted by the close of business within one year of the tax deed recording date listed above and that claims submitted more than one year after this date will not be accepted per state law."[5]

### *The County Receives Competing Claims for Excess Proceeds*

In May 2019, the County sold a property located on 13th Street in Chowchilla (the property) in a tax sale which resulted in $85,426.98 in excess proceeds. Loss and Betty Dillard were the last assessees of the property. The tax deed for the sale was recorded on June 10, 2019.

On January 2, 2020, the County received completed claim forms from Betty's sons, Ralph Hunt and Aaron Hunt, apparently without any supporting documents. On April 22, 2020, the County received a completed claim form from Crystal Pierini in which she asserted she was the property owner's daughter. Pierini submitted the following supporting documents: (1) affidavits for collection of Loss's and Betty's personal property under Probate Code sections 13100 through 13106, in which Pierini

---

[5] The County revised the claim form, claim instructions, and claims policy in 2021. A statement was added to the claim form which advises that if the claim is denied, "**you are aware that you can no longer submit missing documentation as the one (1) year expiration deadline has passed**." Statements were added to the claim instructions that claims cannot be reviewed until after the one-year expiration deadline has passed, "[a]dditional supporting documentation **CANNOT** be submitted after the one (1) year expiration deadline," and the "Treasurer-Tax Collector is not responsible for informing the claimant of missing documentation or incomplete claims."

While the 2021 claims policy continues to state that claimants will receive a letter from the Treasurer-Tax Collector if a claim is denied, it adds that missing documents "**that caused the claim to be denied will not be accepted as the one (1) year expiration deadline has now passed**." The 2021 claims policy also revised the disputed claims procedure as follows: (1) before the board hearing date, if the claim was not submitted to the board for a final decision, the claimant must submit their dispute to the Tax Collector in writing 30 days from the date of the denial letter; and (2) after the board hearing date, the claimant has 90 days to inform the Tax Collector in writing that the claimant intends to file a civil suit in the superior court to overturn the board's decision and the suit must be filed before the end of the 90-day dispute period.

declared she was their successor; (2) a copy of her driver's license; (3) copies of Loss's and Betty's death certificates; (4) a copy of a recorded affidavit by surviving spouse succeeding to title to community property, which Loss recorded on June 26, 2018; and (5) an authorization that Pierini signed.

On June 2, 2020, Ralph Hunt emailed his military paperwork in support of his claim to the County at an email address for the county tax collector. The paperwork included: (1) a Department of Defense, National Agency Check Request, which identified Betty Lou Goodwin as his mother and the property as her address, which also listed the property as Ralph's address from June 1976 to the present; (2) a Servicemen's Group Life Insurance Election, which Ralph signed on November 28, 1980, designating Betty L. Dillard as the beneficiary and listing the property as her address; and (3) an untitled document related to Ralph's discharge, which Ralph signed, included his date of birth, and listed the property as his mailing address after his separation from service.

On June 3, 2020, the Treasurer-Tax Collector's Office forwarded Ralph's email to the "TaxDistroGroup" and stated that if anyone was helping Ralph, his email was for them. On June 10, 2020, Ralph emailed the County stating he ordered a copy of his birth certificate digitally, but it could take 20 to 30 days to be delivered because of the COVID-19 pandemic.

On June 10, 2020, the County received from Global a document entitled "**CLAIM SUMMARY**" dated June 8, 2020, along with supporting documentation, which advised that Global was making a claim to the excess proceeds based on an assignment of rights signed by Michelle Ellen Green. The document listed 11 documents in support of its claim. One attached document was an unsigned "**EXPLANATION OF EVENTS**," which stated the following: (1) Loss and Betty were the record owners of the property pursuant to a grant deed (which was attached); (2) Betty passed away on October 31, 2014, leaving Loss as the surviving joint tenant; (3) Loss passed away on September 1, 2018, apparently intestate and without his estate being probated; (4) Loss had one

9.

biological child, Danny R. Dillard, who never married and had no biological children and who predeceased his father on November 15, 1997, with a certificate of death to follow; and (5) Loss was survived by one sibling, Michelle Green, who is entitled to collect 100 percent of the excess proceeds.

In an attached "Affidavit for Collection of Personal Property" under Probate Code section 13100, Green attested to the following: (1) Loss died on September 1, 2018, at least 40 days had elapsed since his death, and no proceeding had been conducted in California for the administration of his estate; (2) the current gross fair market value of Loss's real and personal property in California did not exceed $150,000, and there was no real property in the estate; (3) the excess proceeds from the tax-defaulted property sold at public auction on May 18, 2019, was approximately $85,576.98; (4) Green is successor of the decedent and to the decedent's interest in the property as defined in Probate Code section 13006; (5) no other person has a superior right to the decedent's interest in the property; and (6) Green requests that the described property be paid, delivered, or transferred to her.

In an attached affidavit, Green declared: (1) Loss and Betty are the same people listed in the grant deed; and (2) she could not provide tax bills, title insurance policies, utility bills, or other supporting documentation to reference the property, as she had not resided in Chowchilla for over 24 years. Also attached was an assignment of right to collect excess proceeds, in which Green assigned her right, title, and interest to collect the excess proceeds to Global. Global submitted the County's official claim form, in which it asserted it was the assignee of a party of interest. Finally, a copy of Green's driver's license was attached.

On June 26, 2020, the County issued denial letters to all claimants. The letter to Global stated: "Claimant has failed to submit a complete claim as per instructions in a timely manner." The letters to Ralph, Aaron, and Pierini stated: "Claimant has failed to submit required documentation as per instructions."

On June 29, 2020, the County received a letter from Global dated June 25, 2020, with the following additional supporting documentation: (1) death certificates for Loss and Betty; (2) birth certificates for "Lows Kirk Dillard, Jr." and Green; and (3) a death certificate for Danny Ray Dillard.

***The Board's Approval of Ralph Hunt's Claim***

The Treasurer-Tax Collector Department submitted an agenda item for the August 4, 2020 board meeting recommending that it consider adopting a resolution authorizing the distribution of excess proceeds of the tax sale to Ralph. The board unanimously adopted the resolution at the August 4, 2020 board meeting. The resolution recited that: (1) on May 20, 2019, the Treasurer-Tax Collector sold the property at public auction for unpaid delinquent property taxes; (2) Ralph claimed the excess proceeds derived from the sale; (3) there were claims filed against the property by lienholders or other parties of interest in the property sold; and (4) the Treasurer-Tax Collector reviewed the filed claims and determined Ralph's claim to be valid. Accordingly, the board resolved that the County's Auditor-Controller draw a warrant in the amount of $85,426.98 in Ralph's favor and that all other claims for the excess proceeds which were not approved by the resolution were rejected.

The following day, the County notified Ralph that his claim for excess proceeds "has been approved after re-reviewing it," and the funds would be sent out within 90 days.

On August 24, 2020, Global sent the County a letter with attachments addressing the County's summary denial of Green's claim and the status of the claims by Perini, Ralph, and Aaron. Global asserted the claim submitted on Green's behalf was timely and must be granted, while the claims of Perini, Ralph, and Aaron must be denied, and explained why. Global asked the Office of the Treasurer-Tax Collector to issue a letter approving Green's claim or, if it would not do so, to explain why Green's claim was denied and advise to whom the Treasurer-Tax Collector intended to disburse the excess

11.

proceeds. Global requested a response by August 31, 2020. The following day, Global sent Aaron Hunt's birth certificate to the Office of the Treasurer-Tax Collector as a supplement to its letter.[6]

On November 25, 2020, the County issued a check to Ralph for the $85,426.98 in excess proceeds.

### *Global's Petition for Writ of Mandate*

Meanwhile, on November 4, 2020, Global filed a petition for writ of mandate against the County of Madera and Tracy Kennedy Desmond as the County's Treasurer-Tax Collector.[7] Global alleged that due to the tax sale of the property, the County received and was holding $85,576.98 in excess proceeds.[8] Global alleged it submitted a timely claim for the excess proceeds and the County's denial of its claim for failure to submit a complete claim in a timely manner was untrue and invalid, was not supported by any valid County policy regarding the submission of claims for excess proceeds, and was inconsistent with the County's practice of allowing claims to be supplemented after timely submission of the original claim.

Global alleged that as Green's assignee, it was entitled to receive the full share of the excess proceeds. Global further alleged the denial of its claim was erroneous as a matter of law, an abuse of discretion, denied Global its substantive and procedural due process rights, denied it equal protection under the law, and was contrary to the County's

---

[6] The record does not show that the County ever responded to Global's letter.

[7] Ralph, Aaron, and Perini were all named as respondents in the petition, but by the end of the proceedings, Ralph and Perini had been dismissed from the action, and Global informed the trial court that it intended to dismiss Aaron as well.

[8] Throughout these proceedings, Global alleged the amount of the excess proceeds it sought to recover was $85,576.98, rather than the $85,426.98 that the County paid out. It is not clear from the record how Global reached that amount, but it is not relevant to the issues on appeal. Consequently, we will refer to the amount Global seeks to recover simply as the "excess proceeds."

practice of handling claims for excess proceeds. Global asserted the County's motivation for the denial was animus towards Global, who was being treated differently than similarly situated claimants.

The petition alleged that the validity of the rules or regulations the County used in reaching the decision could be properly challenged through a petition for writ of mandate, and it was challenging the validity of the County's claim rules both in substance and as applied to Global. Global sought a writ of mandate directing the County to set aside the decision denying Global's claim and pay the excess proceeds it was holding to Global, and an order restraining the County from giving effect to the finding that Global is not entitled to the excess proceeds until further court order or "to show cause why operation of that finding should not be stayed pending the judgment in this proceeding."

### *The First and Second Amended Petitions for Writ of Mandate*

The County demurred to the petition on the ground it was untimely because Revenue and Taxation Code section 4675 required the petition to be filed within 90 days of the board's August 4, 2020 decision. In response, Global filed a first amended petition which alleged that it relied on the County's representation that the deadline to file the petition was November 4, 2020,[9] and added a second cause of action for declaratory relief, asking the court to declare that the County's claim rules relating to the timing for submitting supplemental information after an initial claim is made are invalid as a matter of law, Global's claim was timely, and Global is entitled to receive the full amount of its claim.

---

[9]    Attached to the first amended petition was an email string dated July 20, 2020, that showed: (1) Global emailed an employee in the Treasurer-Tax Collector's Office and asked if the employee could "confirm when the 90 day commences in regard to the above referenced parcel so we can calendar the last day to file a writ?"; and (2) the employee responded "[t]hat date would be 11/4/20."

The County demurred on the same basis as the first demurrer, arguing the action was time-barred and equitable estoppel did not apply because Global was not entitled to rely on the erroneous legal advice provided by a staff member of the Treasurer-Tax Collector's office. In opposition to the demurrer, Global asserted that sections 1094.5 and 1094.6 governed the matter since the validity of the County's denial of Global's claim was properly challenged by a petition for writ of administrative mandate, and the demurrer failed because the County did not comply with the notice requirements of either Revenue and Taxation Code section 4675, subdivision (g) or section 1094.6, subdivision (b). In reply, the County argued, among other things, that the first amended petition did not allege there was an administrative hearing with a written decision or supporting findings, or refer to any statute, charter, or rule that required a written decision or findings.

Following oral argument at the demurrer hearing, the trial court adopted its tentative ruling to sustain the demurrer with leave to amend as its order and gave Global 30 days to file an amended petition. In its ruling, the trial court found that the petition was untimely because the petition was filed more than 92 days after August 4, 2020, when the 90-day statute of limitations of Revenue and Taxation Code section 4675, subdivision (g) began to run, and the first amended petition failed to plead equitable estoppel.

Global filed a second amended petition, which added allegations that the County was estopped from asserting that the petition was untimely. After the County filed an answer to the petition, it filed a motion for judgment on the pleadings as to the declaratory relief cause of action. The County argued that because the first cause of action was for administrative mandamus pursuant to section 1094.5, Global could not maintain the declaratory relief claim as declaratory relief is not an available alternative to an administrative mandamus. Global opposed the motion, arguing the declaratory relief cause of action was proper.

14.

In its tentative ruling to grant the motion, the trial court stated the motion raised the issue of whether a proceeding for a writ of administrative mandate under section 1094.5 is the exclusive remedy to review the administrative action in this case. The trial court found the declaratory relief action "improperly requests relief that is properly brought under the provisions of … section 1094.5," as Global requested a declaration regarding specific agency action. Following oral argument at the hearing on the motion, the trial court adopted its tentative ruling and granted the motion with leave to amend so that Global may address "the as-applied facial validity concerns the Court raised in the tentative."

### The Third Amended Petition

Global filed a third amended petition for writ of mandate and declaratory relief. On the writ of mandate claim, for the first time Global requested a writ directing the County to set aside the decision denying its claim and to pay the excess proceeds to Global "as damages." On the declaratory relief claim, Global requested a declaration that the County's claim rules relating to the deadline for filing a supplemental claim for excess tax sale proceeds were invalid as a matter of law and the County's unequal and selective enforcement of the same claim rules against Global violated equal protection.

The County again demurred to the declaratory relief cause of action, arguing that such a claim is not allowed as an alternative to administrative mandamus. The County asserted the application of an administrative deadline is a ministerial act unless a statutory scheme provides discretion and the Revenue and Taxation Code did not provide such discretion. The County further asserted that even if it had discretion to allow claims to be supplemented after the one-year deadline, declaratory relief could not be used to force it to exercise its administrative discretion in a particular manner. Global argued in its opposition that the demurrer should be overruled because the third amended petition alleged a justiciable controversy separate from the writ of mandate claim. In reply, the County asserted Global's claim that the County was required to allow supplementation of

15.

claims after the one-year deadline should be addressed by way of administrative mandamus and the lawfulness of the claims policy could be decided in such a proceeding.

In its tentative ruling to sustain the demurrer, the trial court noted that the third amended complaint essentially alleged: (1) the County's claim rules were facially invalid because they did not comply with Revenue and Taxation Code section 4675; and (2) the County had a continuous and ongoing practice of applying the claim rules unequally against Global. With respect to the second allegation, the court stated it would sustain the demurrer because it improperly sought review of an as-applied constitutional challenge to an administrative decision subject to review through section 1094.5. As to the allegation of facial invalidity, the court stated it would sustain the demurrer because the complaint failed to plead a viable conflict between the claim rules and California law and Global failed to cite any authority that required the County to accept supplemental claims for excess proceeds of tax sales.

At the hearing on the demurrer, the trial court adopted its tentative ruling and sustained the demurrer as to the declaratory relief cause of action without leave to amend, as Global conceded there was no reasonable possibility to cure given the tentative ruling.

***The Briefing on the Petition***

In October 2023, after the County lodged the administrative record, Global filed its opening brief in support of the petition.[10] Global asserted it had satisfied the requirements for writ relief, citing section 1085 as the applicable standard. Global argued Revenue and Taxation Code section 4675 imposed a duty on the County to distribute the excess proceeds according to the statute and conferred on Global the right to submit its claim to the County as Green's assignee. Global asserted the County's denial of its claim

---

**10** After the administrative record was filed, the trial court directed the County to file a motion to seal because seven pages of the administrative record contained social security numbers. The County subsequently did so and submitted an administrative record which redacted all but the last four digits of the social security numbers.

16.

was substantively arbitrary, capricious, and lacking in evidentiary support, and violated Global's substantive and procedural due process rights.

The County filed an opposition in which it asserted that Global improperly cited authorities pertaining to traditional mandate under section 1085, and the court had previously ruled, and the law required, that a petition for writ of administrative mandamus under section 1094.5 was the appropriate means to overturn the denial of a claim for excess proceeds from a default tax sale, citing *Carloss v. County of Alameda* (2015) 242 Cal.App.4th 116, 126 (*Carloss*). The County argued it correctly acted in a manner required by law by reviewing all claims submitted within the one-year period established by Revenue and Taxation Code section 4675, and it did not have a ministerial duty to distribute the excess proceeds to Global. The County further argued Global did not satisfy its burden of establishing its right to the excess proceeds; therefore, it did not have any legal or equitable interest in the excess proceeds to support its due process claims.

In its reply, Global asserted the County's express acknowledgement that section 1094.5 was the operative statute directly contravened the County's argument that Global was not entitled to a hearing or procedural protections. Global asserted section 1094.5 was the operative statute, and noted the statute's express terms, and California case law, made clear that the statute only applied to a proceeding where a hearing was required to be given and evidence required to be taken, both of which never occurred. Global asserted it had an absolute right to some form of hearing, and the County was required to issue findings from that hearing.

### *Globel's Motion to Augment the Administrative Record*

In December 2023, Global filed a motion to augment the administrative record to add the following: (1) a July 2019 letter from the County to Global about an unrelated claim for excess proceeds; (2) documents obtained through a public records request; (3) the County's documents on excess proceeds claims that became effective July 6,

17.

2021; and (4) the excess tax claim forms from three other California counties. Global contended augmentation was proper because a hearing on its claim was statutorily required and asserted it would have presented these documents had a hearing been conducted.

In its opposition to the augmentation motion, the County argued that Global could not meet the criteria for issuance of a writ of mandate under section 1094.5 because Revenue and Taxation Code section 4675 did not require a hearing, and there was no evidence Global ever requested or was entitled to one, or that the County denied Global a hearing. The County further argued that Global could not use mandamus to compel an administrative officer to exercise discretion in a particular way. Accordingly, the County asserted, there was no legal basis to permit augmentation of the administrative record.

In its reply, Global contended "claims for excess proceeds are 'adjudicatory' in nature and trigger review under" section 1094.5. Global argued it was entitled to some form of hearing and the right to submit additional evidence before the County rendered its decision to deny Global's claim as untimely; therefore, it was entitled to augment the administrative record with the documents it would have presented at that hearing. Global asserted the County expressly conceded in its opposition to Global's petition that section 1094.5 was the governing statute and the County was attempting to "flip-flop."

The hearing on the motion to augment was held on March 22, 2024. On February 20, 2024, the trial court issued an order regarding issues for the parties to discuss at the March 2024 hearing. The trial court explained that in reviewing the file and conducting research, it had the following observations, as applicable here: (1) whether the action was one for administrative mandamus under section 1094.5 or traditional mandamus under section 1085, as the petition was unclear as to which was being sought, yet both counsel have been treating the petition as one for administrative mandamus, and the law appeared clear that administrative mandamus was the proper form of relief to set aside a denial of a claim for tax sale proceeds even if an administrative hearing was required but

18.

not held; and (2) what is included in an administrative record when an administrative hearing, where evidence was taken and a reasoned decision made, was not held.

At the March 22, 2024 hearing, the parties agreed section 1094.5 applied when a hearing was required by law, but they disputed whether that requirement was satisfied in this case. The County's position was that the board's decision was based on the records received from all interested parties within the statutory requirements. Global's counsel argued that purely documentary proceedings can satisfy the hearing requirement if the agency is required by law to accept and consider evidence from interested parties before making its decision, but it did not matter here because "the bottom line is [Global] had no opportunity to present those … documents in the administrative proceeding when the County took the position that our claim was untimely."

After further argument, the parties agreed that section 1094.5 applied and a document review, rather than an evidentiary hearing, was sufficient to meet the hearing requirement. The trial court posed a question to be addressed later, namely, whether the court had the power to order the County to set aside the decision denying Global's claim and directing the County to pay the claim when another claimant was paid and Global did not seek a preliminary injunction to stop the payment. The court continued the hearing on the motion to augment to May 24, 2024.

At the continued hearing on the motion to augment, the trial court adopted its tentative ruling to grant the motion as to all documents except the claim forms from other counties. The court noted that counsel agreed that administrative mandamus was appropriate in this case and an administrative hearing may be based solely on documents. While counsel did not agree whether an evidentiary hearing was required, they agreed the court did not need to confront that issue for the purpose of the augmentation motion. The court set a schedule for supplemental briefing solely on the issues raised by the augmented documents.

19.

### *The Supplemental Briefing*

In its supplemental opposition, the County argued that section 1094.5 did not confer a right to a hearing; rather, the hearing requirement was derived from the statute or rule which authorized or required the hearing and neither the County's claims policy nor Revenue and Taxation Code section 4675 required a hearing on determinations of excess proceeds. The County further argued that Global failed to establish any due process or equal protection violation.

In its supplemental reply, Global asserted there was no dispute that a petition for administrative mandamus was the appropriate means to overturn the denial of a claim for excess proceeds. Global argued section 1094.5 provided the legal requirement of a hearing and the County failed to conduct one. Global asserted the Treasurer-Tax Collector decided to reject Global's claim, as shown by the resolution the board adopted approving Ralph's claim, and the Treasurer-Tax Collector was biased against Global as she commented in an August 7, 2019 internal email that she reviewed the excess proceeds policy and she "really like[d] that you embolden[ed] the part that tells taxpayers they can do their own claims … hopefully more of them will and cut global discoveries out of a million or so dollars."

The trial court issued an order posing additional questions for the parties to address at the hearing on the petition, which primarily concerned the propriety of the case being determined pursuant to section 1094.5. The court noted that since the filing of the petition and its opening brief, Global's "theory of the case has shifted greatly," as Global raised for the first time in its reply that its due process rights were violated because no hearing was provided pursuant to section 1094.5 and merely filing a claim pursuant to the statute dictates that a hearing was required. The trial court rejected Global's claim that section 1094.5 created the right to a hearing and noted "[t]he denial of [G]lobal's application was premised solely on a finding that the *application itself* was incomplete."

20.

The trial court recognized the writ standard had been litigated throughout the litigation, but Global "had changed its argument from what was presented at the outset of this matter, to now allege that section 1094.5 was violated because it never received a hearing pursuant to section 1094.5," without citing any code or statute which required a hearing. The trial court stated: "Overall, [Global]'s changed argument needs to be better articulated to ensure this Court has the authority to issue the relief requested…. [T]he parties should be prepared to address and articulate the argument whether this case can properly be pursued pursuant to … section 1094.5. In particular, authority that indicates a hearing is required even if an application to a government agency is denied or disregarded as incomplete."

The trial court also had questions regarding Global's damages claim. The trial court noted that when Global filed its initial petition it sought a writ directing the County to pay the excess proceeds the County was holding, but Global did not file a request for stay with the court and the County paid the excess proceeds to Ralph a few weeks after Global filed the petition. Consequently, the trial court could no longer order the County to release the disputed funds. The trial court further noted that it was not until the third amended petition was filed in July 2022 that Global changed its claim for relief to a writ mandating the County to pay Global the amount in controversy as damages without leave of court. The trial court understood that a writ of mandate typically permitted a court to issue an order which would allow a government agency to change a decision in order to mitigate damages, but since the disputed funds were no longer in the County's possession and a stay was not sought, the issue appeared to be moot as to the court's ability to order the County to meaningfully change a disputed decision. Accordingly, the court asked the parties to be prepared to address whether the court could order the recovery of damages in an administrative mandamus action, or whether another joined cause of action was required.

Following the August 23, 2024 hearing on the petition, the trial court issued an order setting a briefing schedule to address the issues the court raised. The trial court stated that after the hearing, it noticed something else about Global's paperwork that presented "a further example of the shifting sand in this case as [Global]'s claim continues to evolve." The trial court noted that while Global's claim for excess proceeds stated that its assignor, Green, is Loss's *sibling*, in its reply in support of the petition, Global asserted that Loss is Green's *father*. The court asked how it was to treat this inconsistency and noted that under section 128.7, subdivision (b)(3), an attorney presenting a pleading or petition to the court is certifying to the best of the attorney's knowledge, information and belief that the allegations and other factual contentions have evidentiary support.

The parties filed the requested supplemental briefs. In its brief, Global acknowledged that section 1094.5 only applies when a hearing is required by law and asserted the parties, by expressly acknowledging section 1094.5 was the governing statute, showed they "understood that Global was entitled to some form of notice and opportunity to be heard." Global asserted a hearing was held as the County determined the evidence required for a claim for excess proceeds, received claims from competing parties and, after reviewing those claims, determined the allegedly rightful claimant, but that hearing did not satisfy the due process requirement of section 1094.5. Global further asserted the County's policies recognized an adjudicatory procedure was required. Global argued that under the principles of judicial estoppel, the County was bound by the statement in its opposition brief that administrative mandamus was the appropriate means to overturn the denial of a claim for excess proceeds from a default tax sale.

With respect to whether its request for relief was moot, Global contended the County was required to retain the excess proceeds and could not gain a windfall by wrongfully distributing the money. Finally, Global agreed that Green is Loss's sibling, not his child, and asserted the statement that she was his child was a misunderstanding or

typographical error, and regardless of her status, the analysis is the same as she is Loss's only blood relative and therefore possesses a superior claim.

In its brief, the County argued its determination of whether an application contains sufficient information is reviewed through the exercise of traditional mandamus under section 1085, as neither the county code, local regulations, nor the Revenue and Taxation Code required a hearing, and a hearing was not required to satisfy due process. The County further argued the petition to set aside the award of excess proceeds was moot because the excess proceeds had been distributed to Ralph and Global failed to preserve the status quo during the litigation. Finally, the County argued the claim for damages was barred by the failure to timely present a claim to the County under the Government Claims Act (Gov. Code, § 810 et seq.) (the Claims Act).[11]

### *The Trial Court Dismisses the Petition*

On November 26, 2024, the trial court issued a tentative order to dismiss the petition. The trial court found that the board never considered Global's claim as it was rejected on the grounds it was incomplete and untimely. The court further found that Global failed to cite any statute or county policy that dictated a hearing was legally required before a claim could be denied for failure to comply with the application process, and no hearing was held because the County denied Global's claim based solely

---

[11]    The parties each filed a reply to the other party's supplemental brief, in which they repeated their arguments. Global argued section 1094.5 governed this proceeding, and the County's disbursement of the excess proceeds did not impact Global's petition. The County argued the court's review should be under section 1085, and the petition is moot. The County asserted only a claim for damages was left, which undercut Global's ability to seek a writ as it had an adequate remedy at law, and while a petition for mandamus can involve a claim for damages, Global was barred from bringing such a claim because they failed to comply with the Claims Act. The County further argued judicial estoppel did not apply because the issue had not been decided and the doctrine only applied to statements of fact.

on a finding that the claim was incomplete.[12]  The court therefore determined that traditional mandamus applied.[13]

On the issue of mootness, the court noted:  (1) Global's original petition, filed on November 4, 2020, sought a writ directing the County to pay the excess proceeds it was holding, but no request for a stay was ever filed; (2) the County no longer possessed the excess proceeds as it paid them to Ralph on November 25, 2020, therefore, the court could no longer order the County to release those funds; and (3) it was not until the third amended petition was filed that Global changed its claim for relief to a writ mandating the County to pay Global "the amount in controversy as '*damages*.' "  The court found the issue appeared to be moot and the petition dismissed as moot because it was Global's burden to seek an order staying enforcement of the board's order to disburse the excess proceeds to Ralph, and the court could no longer order release of the disputed funds to Global.

The hearing on the petition was held on December 23, 2024.  Following argument by counsel, the trial court adopted its tentative ruling and dismissed the petition.  The final order was issued on March 4, 2025.  A judgment denying Global's petition for writ of mandamus was entered on April 22, 2025.

---

[12]  In a footnote, the trial court rejected Global's argument that the County was judicially estopped from contending that section 1094.5 did not apply, as Global did not attempt to show the elements of estoppel were satisfied and judicial estoppel does not apply to taking inconsistent legal positions.  The court concluded that judicial estoppel did not bar its consideration of the applicable writ standard.

[13]  In its decision, the trial court noted that Global misrepresented the holding of a case since it appeared to cite from the "California Official Reports Summary" rather than the appellate opinion.  The trial court advised Global that it "should be prepared to address authority that a reference in a reporter summary takes precedence over what is stated in an appellate opinion, or why the levying of such an unqualified argument should not be considered an attempt to deceive the Court," citing section 128.7, subdivision (b).

24.

## DISCUSSION

### I.    Administrative Versus Traditional Mandamus

We begin with Global's contention that the trial court erroneously found traditional mandamus rather than administrative mandamus was the appropriate vehicle for challenging the County's denial of Global's claim. Global contends review should be by administrative mandamus because Global's claim involved the application of a specific set of facts and a hearing on its claim was required by law. Global also contends that the County is judicially estopped from arguing that administrative mandamus is inapplicable because the trial court repeatedly accepted the County's argument that the petition sought a writ of administrative mandamus.

There are two types of review by mandate: ordinary mandate as provided in section 1085 and administrative mandate as provided in section 1094.5. (*Bunnett v. Regents of University of California* (1995) 35 Cal.App.4th 843, 848.) "The nature of the administrative action or decision to be reviewed determines the applicable type of mandate. [Citation.] In general, quasi-legislative acts are reviewed by ordinary mandate and quasi-judicial acts are reviewed by administrative mandate." (*Ibid.*)[14]

An ordinary mandate under section 1085 "is available where the petitioner has no plain, speedy and adequate alternative remedy; the respondent has a clear, present and usually ministerial duty to perform; and the petitioner has a clear, present and beneficial right to performance." (*Conlan v. Bonta* (2002) 102 Cal.App.4th 745, 752.) "[J]udicial review via administrative mandate is available 'only if the decision[] resulted from a "proceeding in which *by law*: 1) *a hearing is required to be given*, 2) evidence is required to be taken, and 3) discretion in the determination of facts is vested in the

---

[14] "Generally speaking, a legislative action is the formulation of a rule to be applied to all future cases, while an adjudicatory act involves the actual application of such a rule to a specific set of existing facts." (*Strumsky v. San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28, 35, fn. 2.)

agency." ' " (*Bunnett, supra*, 35 Cal.App.4th at p. 848; *Conlan*, at pp. 751–752.) "Section 1094.5 expressly provides that it is the *requirement* of a hearing and taking of evidence—not whether a hearing is actually held and evidence actually taken—that triggers the availability for mandamus review. (*Pomona College v. Superior Court* (1996) 45 Cal.App.4th 1716, 1729.) "Where a petition challenges an agency's failure to perform an act required by law rather than the conduct or result of an administrative hearing, the remedy is by ordinary mandate pursuant to … section 1085, not by administrative mandate pursuant to section 1094.5." (*Conlan*, at p. 752.) "Where an agency has failed to provide a hearing required by law, either a petition for administrative mandate or a petition for ordinary mandate may be utilized to obtain the requisite hearing." (*Mobley v. Los Angeles Unified School Dist.* (2001) 90 Cal.App.4th 1221, 1245.)

"The choice of whether to challenge an agency action under traditional mandamus, as opposed to administrative mandamus, is not always straightforward." (*Gann v. Acosta* (2022) 76 Cal.App.5th 347, 353.) While the decision to deny Global's claim as untimely involves the application of facts, namely, whether Global filed a timely claim that established Green's right to the excess proceeds, it does not appear that the County was *required* by law to hold a hearing before making that determination. While Revenue and Taxation Code section 4675 and the County's claims policy require the review of claims for excess proceeds, neither state a hearing is required when undertaking that review or provide for an evidentiary hearing when a claim is denied. Rather the Treasurer-Tax Collector reviews the claims, sends a letter to claimants whose claims are denied, and reports the number of valid claims and disbursement amounts to the board for approval. Although the Treasurer-Tax Collector may seek county counsel's assistance when unable to determine whether multiple claimants are parties of interest or which of multiple claimants are entitled to the excess proceeds, the claims policy does not require a hearing in those situations.

We need not resolve the issue, however, because the standard of review applicable to the dispositive issue in this case, namely, whether the petition is moot, does not depend on the type of writ review. (See, e.g., *State Bd. of Chiropractic Examiners v. Superior Court* (2009) 45 Cal.4th 963, 977 & fn. 3 [declining to decide between §§ 1085 and 1094.5 when unnecessary to the resolution of the appeal]; *Gann v. Acosta*, *supra*, 76 Cal.App.5th at p. 353 [appellate review is the same under either form of mandamus where case turns on statutory interpretation].)[15] A determination of whether the petition is moot raises a purely legal question as the facts on that issue are undisputed. We exercise independent judgment in that situation, no matter whether the issue arises by traditional or administrative mandate. (*Vichy Springs Resort, Inc. v. City of Ukiah* (2024) 101 Cal.App.5th 46, 53 [" '[i]ssues of justiciability, such as mootness, are generally reviewed de novo' "]; *K.G. v. Meredith* (2012) 204 Cal.App.4th 164, 174 ["[t]rial court rulings on mootness are reviewed de novo where, as here, they are decided on undisputed facts"].)

## II. The Petition is Moot

We next address whether the petition is moot, as the resolution of this issue is dispositive of this case. Global contends the trial court erred in denying the petition as moot because: (1) it may recover the excess proceeds as damages, which are available in

---

[15]     We also need not resolve Global's contention that the County is judicially estopped from arguing that traditional mandamus rather than administrative mandamus applies to this proceeding. We note, however, that for judicial estoppel to apply, the County's purported inconsistent positions must have been factual in nature and amount to intentional fraud on the court. (*ABF Capital Corp. v. Berglass* (2005) 130 Cal.App.4th 825, 832; *Tuchscher Development Enterprises, Inc. v. San Diego Unified Port Dist.* (2003) 106 Cal.App.4th 1219, 1245.) The determination of whether traditional or administrative mandamus applies appears to be a legal, not a factual, question, and since the trial court raised the issue itself, there does not appear to be any fraud on the court. (*Clark v. First Union Securities, Inc.* (2007) 153 Cal.App.4th 1595, 1608 ["trial court may, on its own motion reconsider its interim orders, after providing the parties notice and the opportunity to be heard"].)

writ proceedings under section 1095; (2) alternatively, the excess proceeds may be awarded as restitution; (3) even if it may not recover the excess proceeds, the court could issue a writ directing the County to set aside its denial of Global's claim; and (4) the County may not moot the case through its own conduct. Global also contends we should exercise our discretion to decide the case as it involves an issue of broad public interest that is likely to recur, and the County is judicially estopped from arguing the petition is moot. We find no merit to Global's arguments.

" 'A court is tasked with the duty " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.' " [Citation.] A case becomes moot when events " 'render[] it impossible for [a] court, if it should decide the case in favor of plaintiff, to grant him any effect[ive] relief.' " [Citation.] For relief to be "effective," two requirements must be met. First, the plaintiff must complain of an ongoing harm. Second, the harm must be redressable or capable of being rectified by the outcome the plaintiff seeks.' " (*In re S.R.* (2025) 18 Cal.5th 1042, 1051; *Committee for Sound Water & Land Development v. City of Seaside* (2022) 79 Cal.App.5th 389, 405 [" '[t]he pivotal question in determining if a case is moot is … whether the court can grant the plaintiff any effectual relief' "].)

In its initial petition filed on November 4, 2020, Global sought an order directing the County to set aside the decision denying Global's claim and pay Global the excess proceeds the County was holding. While Global also prayed for an order restraining the County from giving effect to the finding that Global was not entitled to the excess proceeds "until further order of this Court and/or to show cause why operation of that finding should not be stayed pending the judgment in this proceeding," Global did not seek a temporary restraining order or preliminary injunction to stay the County's ability to disburse the excess proceeds.

At that time, the County was holding $85,426.98 in excess proceeds. The County disbursed the excess proceeds to Ralph on November 25, 2020, which was more than 90 days after August 4, 2020, when the board approved the resolution authorizing payment of the excess proceeds to Ralph and rejecting all other claims. Global did not serve the County with the summons and petition until March 5, 2021, when it mailed the documents to the County pursuant to the notice and acknowledgement of receipt provisions of section 415.30. There is no evidence in the record that the County was apprised of Global's lawsuit before it distributed the excess proceeds to Ralph. Since the County is no longer holding the excess proceeds, clearly the court can no longer order the County to release those proceeds to Global. Thus, the petition is moot to the extent it seeks such relief.

### A. Voluntary Mootness

Global contends the County may not voluntarily moot the petition through its own conduct citing *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113 (*Minsky*), *Holt v. Kelly* (1978) 20 Cal.3d 560 (*Holt*), and *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498. In *Minsky*, our Supreme Court held that "the government in effect occupies the position of a bailee when it seizes from an arrestee property that is not shown to be contraband." (*Minsky*, at p. 121.)[16] The court explained that the arrestee retained the right to recover the specific property taken, and since such claims are not claims for money or damages, even if the government wrongfully disposes of the bailed property, such claims are not subject to the requirements of the Claims Act. (*Minsky*, at pp. 121–122.)

In *Holt,* our Supreme Court clarified that a claim may be made under *Minsky* "even though some or all of the property may have been dissipated and [the

---

[16]    In *Minsky*, police officers took $7,720 from an arrestee and allegedly wrongfully detained and converted the money by transferring it to the policeman's and fireman's pensions fund. (*Minsky*, *supra*, 11 Cal.3d at pp. 117–118.)

governmental] respondent may be compelled to respond in damages in lieu of property." (*Holt*, *supra*, 20 Cal.3d at p. 565, fn. omitted.)[17] The appellate court in *Escamilla*, following *Minsky* and *Holt*, held that a custodial officer who took a prisoner's personal property and wrongfully failed to return it to him effectively acted as a bailee of the personal property and the prisoner could use a petition for writ of mandamus "to recover that property or its value from that custodial officer." (*Escamilla v. Department of Corrections & Rehabilitation*, *supra*, 141 Cal.App.4th at p. 510.) Thus, a claim under these cases is available in "situations in which the defendant [has] a duty to return seized property, enforceable by way of mandamus." (*City of Stockton v. Superior Court* (2007) 42 Cal.4th 730, 743.)

Unlike the plaintiffs in these cases, Global does not seek the return of personal property from a bailee or any relief that could reasonably be construed as such. Instead, Global asks the court to issue a writ of mandate directing the County to set aside its denial of Global's claim and pay Global the excess proceeds. Global, however, does not have a recognizable right or interest in the excess proceeds until its claim is approved. (*Hodges*, *supra*, 41 Cal.App.5th at p. 550 ["[p]laintiff had no legal or equitable interest in the excess proceeds until he established his former interest in the property and the County approved his claim"].) Thus, unlike the cases Global relies on, the County was not holding Global's property as a bailee when it denied Global's claim, approved Ralph's claim, and distributed the proceeds to Ralph.

Global asserts the County was required to withhold the excess proceeds during the pendency of this litigation. The authorities Global cites, however, do not impose such a requirement. Revenue and Taxation Code section 4675, subdivision (g) requires "[a]ny action or proceeding to review the decision of the board of supervisors" to "be

---

[17] In *Holt*, a county sheriff failed to return a footlocker and its contents to an arrestee after his release from jail. (*Holt*, *supra*, 20 Cal.3d at p. 563.)

commenced within 90 days after the date of that decision of the board of supervisors."
The claims policy states that "[p]roceeds will be disbursed after the 90 day disputed claim
period." Neither that section nor the claims policy prohibits the County from disbursing
the excess proceeds once the 90-day period has expired, which is what occurred here.[18]
While the claims policy's disputed claims procedure allows the Treasurer-Tax Collector
to request that county counsel initiate an interpleader action when there are multiple
claimants and requires the County to retain the excess proceeds on deposit while the
proceeding is pending, an interpleader action was never initiated.[19]

     Global also contends the County had a statutory duty to disburse the excess
proceeds to the proper claimant in accordance with Revenue and Taxation Code

---

[18]    Because the County was not prohibited by statute or its claims policy from
distributing the excess proceeds to Ralph, Global's assertion that it was not required to
obtain an injunction to stay disbursement of the excess proceeds because the County had
a duty under the statute and its claims policy to refrain from disbursing the proceeds fails.
Rather, Global should have sought a stay of any distribution pending a decision on its
petition. (See *Wilson & Wilson v. City Council of Redwood City* (2011) 191 Cal.App.4th
1559, 1581 [the plaintiff partially responsible for its claims becoming moot by failing to
seek a stay of construction of public works project that was completed during the
litigation, which rendered the litigation moot].) While Global complains that it did not
have time to have a preliminary injunction heard before the County disbursed the excess
proceeds, it certainly could have sought a temporary restraining order on an expedited
basis.

    Global asserts that it had no reason to suspect the County would disburse the
excess proceeds so quickly, as it did not know if the proceeds had been awarded to
another claimant. But Global was aware that there were other claimants, as shown by its
August 24, 2020 letter to the County. Moreover, Global recognized a stay was necessary
to restrain the County from giving effect to its finding that Global was not entitled to the
excess proceeds, as it prayed for such relief in its original petition. Since it did not seek
an immediate stay, Global cannot complain of the change in circumstances it might have
prevented by seeking such relief. (*Wilson & Wilson v. City Council of Redwood City*,
*supra*, 191 Cal.App.4th at p. 1581.)

[19]    Moreover, as we have stated, there is nothing in the record to indicate that the
County was apprised that Global's petition had been filed before it disbursed the excess
proceeds.

31.

section 4675, subdivision (e), and its failure to do so does not deprive Global of the right to seek mandamus. Global compares this case to *City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859 (*Dinuba*). There, a city and its redevelopment agency sued a county and associated persons for misallocating property tax revenues to which the agency was statutorily entitled and sought to recover the misallocated revenue. (*Id.* at pp. 862, 863.) Our Supreme Court concluded the defendants were not immune from suit under the Claims Act because the plaintiffs were not seeking money damages for an injury as defined under the Claims Act, and "mandamus may issue to compel a county to comply with its duty to calculate and distribute tax revenue." (*Id.* at pp. 863, 870.) In determining the defendants were not immune from suit, the Supreme Court explained the plaintiffs were not seeking damages but rather sought to compel the defendants "to perform their express statutory duty," and while that "may result in the payment of money, that is distinct from seeking damages." (*Id.* at p. 867.)[20] The Supreme Court rejected the defendants' complaint that requiring them to correct their mistake and pay the plaintiffs the "misallocated revenue would 'inject uncertainty in the public fisc' and have a 'detrimental impact' " because courts "cannot refuse to enforce a statutory duty simply because of an alleged hardship it would pose to a county." (*Id.* at p. 869.)[21]

---

[20] The Supreme Court cited examples of damages that would likely be precluded such as "compensatory damages for a downgraded bond rating or increased interest rates as a result of [the] defendants' failure to disburse the funds to which [the] plaintiffs were entitled." (*Dinuba*, *supra*, 41 Cal.4th at pp. 867–868.)

[21] The Supreme Court also noted that several provisions of the Revenue and Taxation Code appeared to limit any hardship to the defendants, appropriate defenses were available to the defendants such as laches and unclean hands, the taxing entities that received misallocated revenue also were named as defendants and continued to be parties to the action so the misallocated revenue could be recovered from them, and the county may correct the tax rolls that resulted in overpayments and explore offsetting future payments to recover any amounts owed the plaintiffs. (*Dinuba*, *supra*, 41 Cal.4th at p. 869.)

Global contends that, as in *Dinuba*, mandamus is appropriate to compel the County to comply with its statutory duty to disburse the excess proceeds to Global, and it is immaterial that the County's decision to disburse the proceeds to Ralph would impose a hardship on the County. Therefore, Global reasons, payment of the excess proceeds would result from the County's statutory duty to approve Global's claim and disburse the proceeds to it as the rightful claimant. The reasoning in *Dinuba*, however, does not apply here because the approval of a particular party of interest's claim for excess proceeds and disbursement of those proceeds to that party is not a statutory duty. While the County has a duty to determine if any party of interest has claimed the excess proceeds and distribute the proceeds to the parties of interest in the specified order of priority, the County is not statutorily obligated to approve and pay any particular claim. (See § 4675, subd. (e).) This is not like *Dinuba*, where the defendants failed to allocate the tax revenues as set forth by statute, as no statute tells the county how to resolve a claim for excess proceeds. Instead, each county establishes the "information and proof deemed necessary by the board of supervisors to establish the claimant's rights to all or any portion of the excess proceeds." (§ 4675, subd. (d).) Moreover, Global has not identified a recourse available to the County to recover the excess proceeds that were paid to Ralph, who is no longer a defendant in this action.

### B. Treating Recovery of the Excess Proceeds as Damages

Global asserts that even if the court cannot order payment of the excess proceeds, it can order payment of an amount equivalent to the excess proceeds as damages. Global points to the allegations in the third amended petition, which requests an order directing the County to set aside the decision denying Global's claim and pay Global the excess proceeds "as damages."

Damages are available to a successful applicant in a mandamus action. Section 1095 provides that, in a writ of mandamus action, "[i]f judgment be given for the applicant, the applicant may recover the damages which the applicant has sustained, as

found by the jury, or as may be determined by the court or referee, upon a reference to be ordered, together with costs; and a peremptory mandate must also be awarded without delay." (§ 1095.) In other words, "[i]f the judgment is otherwise correct, there can be no doubt of the propriety of thus awarding a money judgment in a *mandamus* proceeding where other grounds for the issuance of a writ of mandate exist." (*Adams v. Wolff* (1948) 84 Cal.App.2d 435, 439.)

Our Supreme Court has held that "mandamus may be brought to start the chain of action designed to compel a ministerial duty by a public officer, even if the ultimate goal may be recovery of a sum of money," and noted it is "clear that mandamus will lie where the recovery of money is merely ancillary to an underlying proceeding which seeks performance of a ministerial duty." (*Holt*, *supra*, 20 Cal.3d at p. 565, fn. 5.) Thus, money damages may be awarded in a petition for writ of mandate only if other grounds (other than money damages) warrant issuance of the writ and the recovery of money damages is ancillary to the writ.

Here, Global contends the court could issue a writ directing the County to set aside its decision to deny Global's claim and make an ancillary award of damages equivalent to the amount of the excess proceeds. Global, however, is not seeking to enforce a ministerial duty that is independent of the damages it seeks. Rather, the duty it seeks to enforce, namely, approval of its claim for excess proceeds, would accomplish nothing unless the County still possessed the excess proceeds.[22]

The employment cases Global relies on are both instructive and distinguishable. In *Poschman v. Dumke* (1973) 31 Cal.App.3d 932, disapproved of on other grounds in *Armistead v. State Personnel Bd.* (1978) 22 Cal.3d 198, 204, footnote 3, the appellate court found that an action by a state college professor seeking damages and other relief

---

[22]    For this reason, Global's assertion that a writ should issue to set aside the County's decision denying Global's claim even if the county paid the excess proceeds to another claimant fails. Such a writ would not provide Global with any effective relief.

for the wrongful denial of tenure was not rendered moot by the grant of tenure almost two years after it should have been granted, because the professor was still entitled to additional salary, service benefits, and consideration for promotion that were dependent on the length of tenure. (*Poschman*, at pp. 935, 943–944.) Thus, the appellate court reversed the order sustaining the demurrer to the professor's petition for writ of administrative mandamus and sent the matter back to the trial court not only to consider the monetary issue of lost salary and any special damages, but also to restore any lost "service benefits" the professor could have accrued. (*Id.* at pp. 935–936, 943–944.)

In *Apte v. Regents of University of California* (1988) 198 Cal.App.3d 1084, a university professor filed a petition for writ of mandate seeking to set aside the chancellor's decision to uphold a faculty vote that terminated programs which resulted in the elimination of the professor's employment. (*Id.* at p. 1088.) After the trial court directed the chancellor to reconsider the decision, the chancellor upheld the faculty's decision but granted the professor his full salary for one academic year as he received inadequate notice of his termination. (*Id.* at p. 1089.) The trial court granted the professor's second petition for writ of mandate, ordering the university to pay the professor's salary and benefits for the subsequent academic year as the eliminated programs would have continued through the end of that year. (*Id.* at pp. 1089, 1099–1100.) Noting that under section 1095 "a judgment granting a writ of mandamus may allow the petitioner to 'recover the damages which [he] has sustained,' " the appellate court affirmed the damage award. (*Apte*, at pp. 1099–1100.)

In each of these cases, the award of damages was subject to relief granted by the writ of mandate, namely, the grant of tenure or reinstatement of employment, thus rendering additional recovery for monetary damages proper under section 1095. In contrast here, any award of damages in the amount of excess proceeds is not subject to the relief that would be granted by the writ of mandate, namely, ordering the County to

set aside its denial of Global's claim, as such an award of damages is not ancillary to the approval of Global's claim but rather it is the goal of Global's petition.[23]

### C.      *Treating the Excess Proceeds as Restitution*

Global alternatively contends that it may recover the amount of excess proceeds as restitution because it has a beneficial right to the excess proceeds as the claimant with priority and the County was unjustly enriched at Global's expense when it refused to disburse the proceeds to Global.  (See *Unilogic v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 627–628 [a person unjustly enriched at another's expense is required to make restitution to the other].)

In its purest sense, "restitution" denotes the return or restoration of a specific thing to its rightful owner.  (*Gardiner Solder Co. v. SupAlloy Corp., Inc.* (1991) 232 Cal.App.3d 1537, 1540; *Dinosaur Development, Inc. v. White* (1989) 216 Cal.App.3d 1310, 1315.)  In modern legal usage, however, the concept has frequently been extended to include " ' "compensation, reimbursement, indemnification, or reparation for benefits derived from, or for loss or injury caused to, another." ' " (*Dunkin v. Boskey* (2000) 82 Cal.App.4th 171, 198, quoting *Dinosaur Development*, at p. 1315.)  Whether applied narrowly or expansively, the remedy seeks to restore the status quo ante by awarding to the plaintiff an amount equal to the value of whatever he or she parted with and thereby restore the plaintiff to the position he or she had been in before the wrongful conduct occurred.  (*Dunkin*, at p. 198; *People v. Martinson* (1986) 188 Cal.App.3d 894, 900.)

Restitution is not available here because Global did not have a beneficial interest in the excess proceeds until it established its interest in the property and the County approved its claim.  (*Hodges*, *supra*, 41 Cal.App.5th at p. 550.)  Therefore, Global did not

---

[23]     Since Global is not entitled to recover the excess proceeds as damages, we need not address the County's argument that Global was required to comply with the Claims Act.

part with anything of value. Moreover, the County did not receive a benefit, as it did not keep the excess proceeds but rather distributed the proceeds to the person it determined was the rightful claimant. Accordingly, ordering the County to pay Global an amount equivalent to the excess proceeds would not restore the status quo ante.

### D. Judicial Estoppel

Global contends the County is judicially estopped from contending that the petition is moot because the trial court dismissed the declaratory relief cause of action based on the County's argument that declaratory relief is not an alternative to an administrative mandamus claim. Global reasons that since the County disbursed the excess proceeds to Ralph long before the trial court dismissed the declaratory relief claim, the court implicitly accepted that Global's mandamus claim was not moot, otherwise it would not have dismissed the declaratory relief claim. Global complains that the court did not provide an opportunity to reinstate the declaratory relief claim when it found the mandamus action moot.

These arguments fail for several reasons. First, it does not appear that Global asked the trial court to reinstate the declaratory relief claim should it find the mandamus claim moot. (See *Howitson v. Evans Hotels, LLC* (2022) 81 Cal.App.5th 475, 489 ["[i]t is well settled that the failure to raise an issue in the trial court typically forfeits on appeal any claim of error based on that issue"].) In addition, Global does not make any meaningful argument supported by citation to legal authorities that the trial court's decision to sustain the demurrer to the declaratory relief claim was erroneous. (See *Yield Dynamics, Inc. v. TEA Systems Corp.* (2007) 154 Cal.App.4th 547, 556–557 ["an appellant must do more than assert error and leave it to the appellate court to search the record and the law books to test his claim"; "[t]he appellant must present an adequate argument including citations to supporting authorities."].)

Finally, judicial estoppel does not apply to a legal argument, such as whether Global could maintain a declaratory relief claim. (*ABF Capital Corp. v. Berglass*, *supra*,

130 Cal.App.4th at p. 832 [judicial estoppel is invoked "to prevent judicial fraud from a litigant's deceitful assertion of a position completely inconsistent with one previously asserted"; "[t]he inconsistent position generally must be factual in nature"].) To the contrary, "[l]egal arguments can be considered at any stage in a case … that involves purely legal issues and undisputed facts." (*Field v. Bowen* (2011) 199 Cal.App.4th 346, 355, fn. 3.)

### E.  The Public Interest Exception to Mootness

Finally, Global asserts that even if the petition is technically moot, we should exercise our discretion to reach the petition's merits under the public interest exception to mootness. This exception applies when there is an "important question affecting the public interest that is capable of repetition, yet evading review." (*California Water Curtailment Cases* (2022) 83 Cal.App.5th 164, 181–182.) Global asserts we should exercise our discretion to resolve the issues raised by the petition because the County's misconduct threatens the public interest by treating claimants inequitably and denying them due process, and this conduct threatens to be repeated because the County routinely processes claims for excess tax proceeds.

We decline to exercise our discretion to resolve the moot questions presented here. In our view, any resolution would be unlikely to provide guidance for future disputes, as the processing of claims is inherently driven by the facts of each claim. (See *MHC Operating Limited Partnership v. City of San Jose* (2003) 106 Cal.App.4th 204, 215 [declining to apply public interest exception when the appellate issues are essentially factual in nature and therefore require case-by-case resolution].) Moreover, a challenge to the County's processing of future claims for excess proceeds is not likely to evade review as there are means for raising such a challenge before the County distributes the proceeds. The sole reason this case evaded review was Global's failure to take steps to prevent the County from disbursing the excess proceeds to another claimant.

In sum, the petition is moot because Global cannot be provided effective relief as the County distributed the excess proceeds to another claimant. Since Global has not shown that the trial court erred in dismissing the petition, we affirm the judgment.[24]

## **DISPOSITION**

The judgment is affirmed. Costs on appeal are awarded to respondents.

DE SANTOS, J.

WE CONCUR:


PEÑA, Acting P. J.


HARRELL, J.

---

[24] Since we agree with the trial court that the petition must be dismissed as moot, we do not reach Global's arguments on the merit of the petition.